UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                              **:**

HUDSON BAY MASTER FUND LTD.      **:**
                              **:**     Case No. _____
           Plaintiff,        **:**

          - against -        **:**     **<u>COMPLAINT</u>**
                              **:**
PATRIOT NATIONAL, INC. and        **:**
STEVEN M. MARIANO            **:**
                              **:**
          Defendants,      **:**
                              **:**
            - and -           **:**
                              **:**
AMERICAN STOCK TRANSFER & TRUST   **:**
COMPANY, LLC as Transfer Agent to    **:**
Defendant Patriot National, Inc.        **:**
                              **:**
        Nominal Defendant.    **:**
                              **:**
---------------------------------------------------------X

        Plaintiff Hudson Bay Master Fund Ltd ("Hudson Bay"), by its attorneys Schulte

Roth & Zabel LLP, as and for its Complaint against Defendants Patriot National, Inc. ("Patriot

National") and Steven M. Mariano, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

        1.   This action presents, in part, a straightforward breach of contract claim.

Defendant Patriot National has a binding and enforceable contractual obligation to deliver shares

of its Common Stock (the "Shares") to Hudson Bay pursuant to a warrant (the "New Series B

Warrant"). Hudson Bay has satisfied its end of the bargain: it paid for the warrant and the

Shares and demanded delivery of the Shares. However, in violation of iron-clad contractual

commitments, Patriot National has unjustifiably refused to deliver the Shares. Accordingly,

Hudson Bay now seeks specific performance of Patriot National's obligation to deliver the Shares and damages resulting from its breach.

2. In addition, Hudson Bay brings claims against Patriot National's controlling shareholder, President, Chief Executive Officer and Chairman of its Board of Directors, Defendant Steven Mariano, for his role in this matter. Mariano, who dominates and controls Patriot National, is contractually obligated to maintain enough unencumbered Shares for delivery to Patriot National upon exercise of the warrants, and Patriot National, in turn, is obligated to deliver an equivalent number of Shares to Hudson Bay. However, it appears that Mariano has not delivered the Shares to Patriot National as required. According to public filings, Mariano now lacks the amount of Shares he needs to deliver to Patriot National and other investors to satisfy his end of the bargain because, in contravention of his contractual commitments, Mariano has pledged too many of his Shares as collateral for personal loans. Thus, Hudson Bay has asserted various claims against Mariano for the contractual breach and tort he committed in what is believed to have been his role in orchestrating the non-delivery of the Shares to Hudson Bay.

3. This saga began when Defendants approached Hudson Bay and other investors through a placement agent about participating in a December 2015 private placement transaction with both Patriot National and Defendant Mariano (the "Transaction").[1] Patriot National, which is a conglomerate consisting of various businesses that provides technology, outsourcing and employment advisory services to insurance companies and other businesses, pitched the Transaction as a means of raising capital for strategic acquisitions that could grow Patriot National's business and improve its overall financial health. Defendant Mariano sought to enter into the Transaction so that he could sell some of his Shares and realize a personal gain.

---

[1] All capitalized terms not defined herein shall have the same meaning and definition provided in the Transaction Documents, as defined in Paragraph 23, below.

4.    The Transaction was entered on December 13, 2015 through, among other things, a Securities Purchase Agreement that provided for the sale of restricted, unregistered Shares and the issuance of Series A and Series B warrants (the "Original Series A Warrant," "Original Series B Warrant," and collectively the "Original Warrants"). The Original Series B Warrants were a critical part of the pricing of the Transaction because they provided Hudson Bay with downside risk protection.

5.    Because investing in unregistered shares is inherently risky, there was concern that the value of the Shares being purchased would decrease upon their issuance and before the Shares became freely tradable. The Original Series B Warrants were designed to provide "insurance" against the risk of such a decrease. That risk mitigation was accomplished by a formula pursuant to which additional shares would be deliverable to Hudson Bay based on the price of publicly-traded Shares; if the Share price decreased, then Hudson Bay would receive additional Shares upon exercise of the Original Series B Warrant for nominal consideration. In that way, Hudson Bay would be protected from a decrease in the value of its Shares.

6.    All of the Shares to be delivered to Hudson Bay under the Original Series B Warrant were to be delivered by Mariano to Patriot National and then, in turn, Patriot National was to deliver an equivalent number of newly-issued Shares to Hudson Bay. The contractual commitment to ensure that an adequate amount of Shares would be available to Hudson Bay upon the exercise of the warrant was memorialized in the aptly-named Stock Back-to-Back Agreement, entered into between Mariano and Patriot National.

7.    Mere days after the Securities Purchase Agreement closed, Defendants sought to rescind a portion of the Transaction and to negotiate a new structure. Hudson Bay

agreed to accommodate Defendants and, in the process, sacrificed substantial economic benefits that it had bargained for under the original deal.

8.     The re-negotiated and re-structured deal is set forth in a Rescission and Exchange Agreement, entered into by Defendants and Hudson Bay on December 23, 2015 (the "Rescission and Exchange Agreement").  Under the terms of that agreement, which amended the Securities Purchase Agreement, Hudson Bay, among other things, returned some of the Shares it had purchased to Patriot National and received new warrants, including the New Series B Warrant at issue in this action, and cash for the Shares it had returned.

9.     Notwithstanding its significant accommodation in agreeing to restructure the deal at Patriot National's request, when Hudson Bay sought to exercise the New Series B Warrants, Patriot National refused to deliver the Shares.  Patriot National has provided no legitimate basis for its refusal.  Although Patriot National has cited an investigation by the Financial Industry Regulatory Authority ("FINRA") as a justification, it has not explained how any such investigation could purportedly justify its refusal to honor Hudson Bay's exercise of the New Series B Warrant.  That said, Hudson Bay is not a FINRA regulated entity and has no knowledge of any such investigation or of any purported wrongdoing.

10.   Given that Patriot National's issuance and delivery of the Shares to Hudson Bay is to follow Defendant Mariano's delivery of the same number of Shares to Patriot National, Defendant Mariano's refusal to deliver Shares to the Company is the only logical reason for the non-delivery of Shares to Hudson Bay.  In fact, public filings reveal that the most likely reason why Mariano has not delivered the Shares as required is that, contrary to his contractual commitment, Mariano does not have sufficient unencumbered Shares to meet his delivery obligations to all investors, including Hudson Bay.  Under the circumstances, the appropriate

course of action is for the Company to sue Mariano to force him to honor his contractual commitment to deliver the Shares due.  However, because Mariano dominates and controls Patriot National, not only has he caused Patriot National not to take that action, but he has caused Patriot National to refuse to honor its contractual commitments to Hudson Bay.

11.     As a result of Defendants' conduct in connection with the New Series B Warrant and the ancillary agreements relating to the Transaction, Plaintiff Hudson Bay brings this action for specific performance, breach of contract, and tortious interference.

## THE PARTIES

12.     Plaintiff Hudson Bay Master Fund Ltd. is an investment fund that transacts in, among other things, investments that provide public companies with capital through both equity and debt investments.  Hudson Bay is organized under the laws of the Cayman Islands and has its principal place of business located at Walker House, KY1-9005, 87 Mary Street, George Town, Grand Cayman, Cayman Islands.  For purposes of diversity under 28 U.S.C. § 1332(a), Hudson Bay is a citizen of the Cayman Islands, a foreign state.

13.     Defendant Patriot National, Inc. is a corporation organized under the laws of Delaware with its principal  place of business located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.  For purposes of diversity under 28 U.S.C. § 1332(a), Patriot National is a citizen of both Delaware and Florida.

14.     Defendant Steven M. Mariano is a natural person who, upon information and belief, is a citizen and resident of the state of Florida.  Mr. Mariano is the President and Chief Executive Officer of Defendant Patriot National, as well as the Chairman of Patriot National's Board of Directors.  For purposes of diversity under 28 U.S.C. § 1332(a), Mr. Mariano is a citizen of Florida.

15.     Nominal Defendant American Stock Transfer & Trust Company, LLC (the "Transfer Agent") is Defendant Patriot National's designated transfer agent in connection with the Transaction.  The Transfer Agent is a limited liability company organized under the laws of New York with its principal place of business located at 6201 15th Avenue, Brooklyn, NY 11219.  Nominal parties are disregarded for purposes of diversity under 28 U.S.C. § 1332(a).

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the action is brought by a citizen of a foreign state against citizens of States within the United States, and the matter in controversy exceeds the sum or value of $75,000 exclusive of costs and interest.

17.     Venue is proper in this District pursuant to 27 U.S.C. § 1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, including, but not limited to, negotiations of the relevant transaction documents, Hudson Bay's execution of same, and the closing of the Transaction giving rise to this action.

18.     Additionally, in Section 11 of the New Series B Warrant, Section 9(a) of the Securities Purchase Agreement, and Section 8(c) of the Rescission and Exchange Agreement, Defendants consented to jurisdiction and venue in the United States District Court for the Southern District of New York.  Pursuant to those same provisions, the New Series B Warrant, the Securities Purchase Agreement, and the Rescission and Exchange Agreement are governed by and subject to interpretation under New York law.

## FACTUAL ALLEGATIONS

**The Securities Purchase Agreement**

19.     On December 13, 2015, Defendants entered into the Securities Purchase Agreement.  Under the terms thereof, Hudson Bay purchased (a) 750,000 Shares directly from Patriot National,[2] (b) 1.125 million Shares directly from Defendant Mariano, and (c) the Original Warrants, for a total purchase price of $22.5 million.

20.     The Original Series B Warrant contained an adjustable Share component under which the number of Shares that could be exercised was subject to a formula set forth in the Original Series B Warrant.  Notably, the Shares underlying the Original Series B Warrant were "pre-funded" as they were included in the purchase price paid by Hudson Bay to the Defendants at closing, except for a nominal exercise price of one penny for each Share.

21.     Sixty (60) percent of any additional Shares to be delivered to Hudson Bay pursuant to the adjustable Share component of the Original Warrants were held by Defendant Steven M. Mariano.  Accordingly, to ensure that Defendant Mariano would provide the Shares necessary to satisfy exercises of the Original Warrants, Defendants Mariano and Patriot National entered into a Stock Back-to-Back Agreement on the same day that the Securities Purchase Agreement was executed, pursuant to which Mariano agreed to sell to Patriot National, and Patriot National agreed to purchase from Mariano, a number of Shares equal to sixty (60) percent of the Shares deliverable to holders of the Original Warrants upon the exercise thereof.

22.     In addition, Defendants agreed to issue "irrevocable instructions to [the Transfer Agent] … in a form acceptable to [Hudson Bay and the other investors]" to issue certificates or credit Shares "for the Common Shares and the Warrant Shares in such amounts as

---

[2] The aggregate number of Shares Hudson Bay purchased from Patriot National included 250,000 outstanding Shares and 500,000 Shares deliverable to Hudson Bay for no additional consideration (other than a nominal exercise price of one penny for each Share) as base Shares under the Original Series B Warrant.

specified from time to time by each Buyer to [Patriot National] upon the exercise of the Warrants[.]"  Those irrevocable instructions to Patriot National's transfer agent were defined in Section 5(b) of the Securities Purchase Agreement as the "Irrevocable Transfer Agent Instructions."

23.     As is customary in private placement transactions that require the negotiation and execution of numerous ancillary agreements and sub-documents, the representations and warranties of Defendants Patriot National and Mariano repeatedly refer to their obligations under the "Transaction Documents," which is defined in Section 3(a)(ii) of the Securities Purchase Agreement, as follows:

> "'Transaction Documents' means, collectively, this Agreement, the Common Shares, the [Original] Warrants, the Registration Rights Agreement, the Irrevocable Transfer Agent Instructions … *and each of the other agreements and instruments entered into or delivered by any of the parties hereto in connection with the transactions contemplated hereby and thereby, as may be amended from time to time*."  (emphasis added).

24.     Both Mariano and Patriot National agreed to pay all costs and expenses, including attorneys' fees and expenses, incurred by Hudson Bay as a result of any breaches by Patriot National or Mariano of any representations, covenants, warranties, or obligations in any of the Transaction Documents.

25.     Section 9(k) of the Securities Purchase Agreement states that:

> "[E]ach of [Patriot National] and [Mariano] shall defend, protect, indemnify and hold harmless [Hudson Bay] . . . from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith (irrespective of whether any such Indemnitee is a party to the action for which indemnification hereunder is sought), and including reasonable attorneys' fees and disbursements" incurred by Hudson Bay "as a result of, or arising out of, or relating to (i) any misrepresentation or breach of any representation or  warranty made by [Patriot National or Mariano] in any of the Transaction Documents, [or] (ii) any breach of any covenant, agreement or

8

obligation of [Patriot National or Mariano] contained in any of the Transaction Documents …"

**The Rescission And Exchange Agreement**

26.     Within a few days after the closing of the Transaction, Patriot National claimed that certain of its shareholders were unhappy with its terms, and that Patriot National was under a great deal of pressure to rescind its sale of Shares and to restructure the Transaction. With regard to the Original Series B Warrant, Patriot National claimed that the price for its Shares had dropped lower than it had anticipated, which would result in a larger than expected number of Shares deliverable to Hudson Bay.  It therefore sought to delay the measuring period of the stock price, to a time when it was expected that the Share price would be higher and thus the number of Shares issuable to Hudson Bay upon exercise of the Series B Warrants would be lower (thereby yielding less consideration for Hudson Bay).

27.     Hudson Bay agreed to Patriot National's request to re-negotiate and restructure the Transaction, and to significantly reduce the total size of the investment by unwinding the newly-issued Shares Hudson Bay purchased from Patriot National and proceeding with only the Shares purchased directly from Mariano.  By accommodating Patriot National, Hudson Bay agreed to walk away from an investment opportunity with significant potential economic upside when it had no contractual obligation to do so.

28.     Accordingly, on December 23, 2015, Defendants and Hudson Bay entered into the Rescission and Exchange Agreement, which, among other things, amended certain provisions of the Securities Purchase Agreement and exchanged the Original Warrants for new Series A and Series B Warrants (the "New Warrants").

29.     Under the terms of the Rescission and Exchange Agreement, Patriot National returned $9 million to Hudson Bay and Hudson Bay surrendered the equivalent of

750,000 Shares (through the return of the 250,000 Shares it had purchased from Patriot National and the elimination of Hudson Bay's rights to 500,000 Shares through the base Share component of the Original Series B Warrant).[3]  Defendant Mariano, however, kept the $13.5 million that Hudson Bay paid to him for the 1,125,000 Shares Hudson Bay purchased directly from Mariano.

30.     Like the Original Series B Warrant, the New Series B Warrant was "pre-funded," in that Hudson Bay already has paid for the Shares that are deliverable to Hudson Bay upon exercise of the New Series B Warrant, except for the nominal penny per Share exercise price.

31.     One key difference between Defendants' obligations under the Original Warrants and those under the New Warrants is that Defendant Mariano holds *one hundred* (100) percent of the Shares deliverable pursuant to the New Warrants, as compared to sixty (60) percent of the Shares deliverable pursuant to the Original Warrants.

32.     Accordingly, upon the execution of the Rescission and Exchange Agreement, Defendants Mariano and Patriot National entered into the Amended Back-to-Back Agreement (the "Back-to-Back Agreement"), under which Mariano agreed to sell to Patriot National, and Patriot National agreed to purchase from Mariano, one hundred (100) percent of the amount of Shares deliverable to holders of the New Warrants upon the exercise thereof.  By obligating Mariano to deliver to Patriot National the full amount of any Shares deliverable to holders of the New Warrants upon exercise thereof, the Back-to-Back Agreement was intended to ensure that Patriot National would be able to honor its obligations under the New Warrants without diluting the public shareholders.

---

[3] The aggregate number of Shares deliverable to Hudson Bay under the New Warrants is higher than the aggregate number of Shares deliverable to Hudson Bay under the Old Warrants due to the Series A Warrants, which are not at issue in this litigation.

33.     The Rescission and Exchange Agreement amended the definition of "Transaction Documents" to include the Rescission and Exchange Agreement and substantively identical rescission and exchange agreements entered into between Defendants and the other investors who purchased Shares from Patriot National under the Securities Purchase Agreement. Likewise, all references to the Old Warrants in the Securities Purchase Agreement were amended to refer to the New Warrants.

34.     Notwithstanding those material changes, the vast majority of the terms and conditions of the Securities Purchase Agreement, and Defendants' representations and warranties therein, remain in full force and effect.

**The Back-to-Back Agreement**

35.     As mentioned, the Back-to-Back Agreement is one of the "Transaction Documents" referenced in the Securities Purchase Agreement and the Rescission and Exchange Agreement.  Under Section 1.1 of the Back-to-Back Agreement, Mariano agreed to "sell, assign, transfer, convey and deliver to the Company, a number of shares of Common Stock equal to 100% of the New Warrant Shares . . . to be issued in connection with the exercise by [Hudson Bay or another investor] of such New Warrants[.]"

36.     Reciprocally, under the same Section of the Back-to-Back Agreement, Patriot National agreed to "purchase, acquire and accept the [Shares] from [Mariano]."

37.     Defendant Mariano also represented and warranted that he "at all times shall (a) own sufficient shares of Common Stock to satisfy his obligations under Section 1.1 . . ., (b) not sell or transfer (contingently or otherwise) any shares of Common Stock that will leave him with ownership of less than such number of shares of Common Stock, and (c) not place or permit to exist any liens, charges or encumbrances."  (Back-to-Back Agreement § 4.1.)

**The New Series B Warrant**

38.     One of the New Warrants issued under the Rescission and Exchange Agreement is the New Series B Warrant, which was issued by Patriot National and delivered to Hudson Bay on December 23, 2015 in exchange for the Original Series B Warrant.

39.     Patriot National certifies in the New Series B Warrant that "for good and valuable consideration," Hudson Bay is the registered holder of the New Series B Warrant and that Hudson Bay is entitled to purchase Shares from Patriot National at a "nominal exercise price of $0.01 . . . per Warrant Share" by delivery of an "Exercise Notice," a form of which is attached to the New Series B Warrant.

40.     The New Series B Warrant expressly states that the "Aggregate Exercise Price" for the Shares deliverable under the New Series B Warrant was "pre-funded to [Patriot National] on or prior to the initial Issuance Date and, consequently, no additional consideration (other than the [nominal exercise price of one cent per Share]) shall be required to be paid by [Hudson Bay] to any Person to effect any exercise of this Warrant."

41.     Pursuant to Section 1(a) of the New Series B Warrant, within three (3) trading days of receipt of an Exercise Notice under the New Series B Warrant, Patriot National is required to deliver the Shares called for by the Exercise Notice.

42.     Under Section 1(g)(i) of the New Series B Warrant, Patriot National is required to "at all times keep reserved for issuance under this Warrant a number of shares of Common Stock at least equal to the maximum number of shares of Common Stock as shall be necessary to satisfy the Company's obligation to deliver shares of Common Stock under the [New Warrants] then outstanding …."

43.    In addition, under Section 1(g)(ii), in the event that Patriot National does not have a sufficient number of authorized Shares to satisfy its obligations under the New Warrants, Patriot National is required to "immediately take all action necessary to increase the Company's authorized shares of Common Stock to an amount sufficient to allow the Company to reserve the Required Reserve Amount for all the [New Warrants] then outstanding." The foregoing underscores Defendant Patriot National's stringent duty to be in a position to deliver—within three (3) trading days—the Shares deliverable pursuant to the New Series B Warrant upon exercise thereof.

44.    The number of Shares Hudson Bay is entitled to purchase under the New Series B Warrant is determined by a formula principally in Section 2(b) of the New Series B Warrant.  That Section provides that the number of Shares that "may be purchased upon exercise of this [New Series B Warrant] shall equal . . . the Adjustment Share Amount."  The Adjustment Share Amount is a number that equals the difference of (i) the quotient of the price paid for Mariano's Shares under the Securities Purchase Agreement ($13,500,000) divided by 90% of the lowest 10-day volume-weighted average stock price between February 1, 2016 and April 4, 2016, minus the number of Shares that Hudson Bay purchased under the Securities Purchase Agreement from Defendant Mariano (1,125,000 Shares).

45.    As mentioned, the function of the Adjustment Share Amount formula was to provide downward purchase price protection for Hudson Bay.  Specifically, if the price of publicly-traded Shares of Patriot National fell below the price that Hudson Bay paid for the Shares under the Securities Purchase Agreement ($12 per share),[4] then the number of Shares deliverable pursuant to the New Series B Warrant would increase.  The additional shares that

---

[4] Under the Securities Purchase Agreement, as amended by the Rescission and Exchange Agreement, Hudson Bay purchased 1,125,000 Shares from Defendant Mariano for a total price of $13,500,000, or $12 per Share.

Hudson Bay would receive pursuant to the New Series B Warrant effectively served to reduce the price per Share that Hudson Bay paid.  So, although Hudson Bay received 1,125,000 shares for $13.5 million through the Securities Purchase Agreement, it would receive additional shares through the New Series B Warrant for almost no additional consideration.[5]

46.     Section 1(f)(i) of the New Series B Warrant includes a blocker provision to ensure that Hudson Bay will not become, as a result of holding the New Series B Warrant, a beneficial owner in excess of 4.99% of Patriot National's issued and outstanding Shares (the "Blocker Provision").  The Blocker Provision limits Hudson Bay's ability to exercise its New Series B Warrant up to 4.99% of Patriot National's issued and outstanding Shares.  In order to acquire additional stock through the New Series B Warrant, Hudson Bay must first sell such Shares, so that its beneficial ownership level falls below 4.99%, at which time it can exercise the New Series B Warrant again up to 4.99% of Patriot National's stock.

47.     As protection against the very type of breach that is now occuring, Patriot National agreed to pay any costs incurred by Hudson Bay, including attorneys' fees, to enforce and/or collect upon the New Series B Warrant.  Section 15 of the New Series B Warrant states that:

> "If … this Warrant is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding or the holder otherwise takes action to collect amounts due under this Warrant or to enforce the provisions of this Warrant … then [Patriot National] shall pay the costs incurred by [Hudson Bay] for such collection, enforcement or action . . . including, without limitation, attorneys' fees and disbursements."

---

[5] Accordingly, if, for example, the Adjustment Share Amount yielded an additional 1,125,000 shares through exercise of the warrant, Hudson Bay's effective purchase price of the Shares would be $6 ($13.5 million for 2.5 million shares) rather than $12 ($13.5 million for 1.25 million shares).

**Plaintiff's Exercise of the New Series B Warrant**

48.     After the closing of the Transaction, the price for the publicly-traded Shares dropped substantially.  Although the measuring period for the Adjustment Share Amount had been moved to a later date as an accommodation to Patriot National, during such period the Share price fell to an even lower price than Patriot National had hoped.  The lower Share price during the modified measuring period was due principally to Patriot National's February 24, 2016 earnings announcement for the fourth quarter of 2015, which disappointed analysts and led one analyst (SunTrust) to downgrade Patriot National's stock on February 26, 2016.

49.     In its Form 10-K filing with the Securities and Exchange Commission on March 21, 2016, Patriot National stated that "[b]ased on the lowest 10-day volume-weighted average stock price during the period commencing on February 1, 2016 through March 17, 2016 of $4.51, we estimate that 4,895,985 shares of our common stock would be issuable upon exercise of the New Series B Warrants."

50.     On March 28, 2016, Hudson Bay sent an email to Patriot National asking Patriot National to confirm Hudson Bay's calculations of the number of Shares Hudson Bay was entitled to purchase pursuant to the New Series B Warrant.  In the email, Hudson Bay calculated that it was eligible to receive up to 2,203,511 Shares pursuant to the New Series B Warrant (without regard to the Blocker Provision), and specifically that "[w]e compute that we'd be able to exercise to receive up to 2,069,457 registered shares for a Series B exercise, with the balance of 134,054 shares being restricted[.]"  Patriot National did not respond to the March 28, 2016 email and, as of the date of this Complaint, has not taken issue with Hudson Bay's calculations regarding the number of Shares it is entitled to purchase pursuant to the New Series B Warrant.

Accordingly, Patriot National has waived any objection it might otherwise have to that calculation.

51.     On April 5, 2016, Hudson Bay submitted an exercise notice to Patriot National for the delivery of 1,000,000 Shares under the New Series B Warrant (the "First Exercise Notice").  On April 8, 2016, Hudson Bay submitted a second Exercise Notice pursuant to the New Series B Warrant, this time for the delivery of 356,004 Shares (the "Second Exercise Notice," and together with the First Exercise Notice, the "Exercise Notices").

52.  On April 8, 2016, Hudson Bay paid the exercise price for all the Shares subject to the Exercise Notices.[6]  Accordingly, 1,000,000 Shares were due to be delivered to Hudson Bay on Friday, April 8, 2016 and 356,004 Shares are due to be delivered on April 13, 2016.  Hudson Bay intended to sell all those Shares immediately upon receipt.

53.     The Shares already held by Hudson Bay, plus the 1,356,004 Shares subject to the Exercise Notices, constitute 4.99% of Patriot National's issued and outstanding stock. Therefore, pursuant to the Blocker Provision, Hudson Bay may not acquire additional shares from the New Series B Warrant until it receives delivery of Shares and sells them.  It is thus precluded from delivering an additional Exercise Notice for the balance of the 847,507 Shares underlying the New Series B Warrant until such time as Patriot National delivers that amount of Shares to Hudson Bay, and Hudson Bay sells them.

54.     Hudson Bay presently intends to obtain and sell all of the Shares underlying the New Series B Warrant.

---

[6] Patriot National subsequently returned those funds, presumably based on its unjustified refusal to honor the Exercise Notices.  As of the time of the filing of this Complaint, Hudson Bay is preparing to re-send the funds to Patriot National.

**Defendants' Repudiation and Breach of the New Series B Warrants**

55.     In spite of Hudson Bay's accommodation to Defendants in agreeing to restructure multiple aspects of the original deal shortly after closing, Defendants nevertheless refused to deliver the Shares when Hudson Bay submitted its Exercise Notices.  The same day that Hudson Bay delivered its First Exercise Notice, counsel for Patriot National sent a letter to Hudson Bay stating that Patriot National "will not honor" Hudson Bay's First Exercise Notice pending the resolution of an investigation into the Transaction by the Financial Industry Regulatory Authority ("FINRA").

56.     Patriot National claimed that, in January 2016, FINRA "had launched an investigation into the Transaction to determine the extent, if any, of any fraudulent or unlawful activity that may have occurred leading up to or in connection with the Transaction."  Hudson Bay was not previously aware of any investigation into the Transaction, nor is Hudson Bay aware of any allegedly fraudulent or unlawful conduct in connection with the Transaction.  Moreover, Hudson Bay is not regulated by, or subject to, the jurisdiction of, FINRA.  Notably, Patriot National did not identify any contractual provision that excused its failure to deliver the fully-paid-for Shares to Hudson Bay.  Nor could it, as such failure is uncontrovertibly a breach of the plain terms of the New Series B Warrant.

57.     The existence of a FINRA investigation does not justify Defendants' failure to deliver the Shares under the New Series B Warrants or otherwise.  Indeed, the New Warrants were structured by sophisticated business parties and their counsel so as to be readily-exercisable on three-days' notice.  Covenants obligate Patriot National to reserve the amount of Shares exercisable under the New Warrants.  A separate agreement was entered into between

17

Patriot National and Mariano (the Back-to-Back Agreement), precisely to ensure that the Shares will be available for prompt delivery.

58.     That the purported January 2016 FINRA investigation was a pretext to avoid Patriot National's and Mariano's delivery obligations pursuant to the New Series B Warrant, is made clear by the other actions that Patriot National has taken with regard to the Shares since that alleged investigation began.

59.     Namely, in February and March 2016, Patriot National registered with the Securities and Exchange Commission the Shares delivered pursuant to the Transaction and the Shares to be delivered pursuant to the New Warrants.  It was only *after* Hudson Bay delivered its First Exercise Notice, that Patriot National claimed that a purported FINRA investigation precluded Patriot National from honoring its obligations under the New Series B Warrants.

60.     On April 6, 2016, Hudson Bay responded to Patriot National's letter advising Patriot National that it had not provided any valid basis or justification for its decision not to honor the First Exercise Notice and further demanding that Patriot National deliver the Shares deliverable pursuant to the New Series B Warrant by April 8, 2016.

61.     On April 7, 2016, counsel for Hudson Bay sent an email to counsel for Defendant Patriot National demanding that Patriot National identify any defenses (other than the purported FINRA investigation) for Patriot National's failure to perform under the New Series B Warrant.

62.     On April 11, 2016, Patriot National's counsel provided another non-response.  Patriot National once again claimed that a FINRA investigation excused its failure to deliver, and it once again failed to provide a contract-based justification for its breach.

63.     But for the Defendants' intentional and unjustified conduct in determining not to honor Hudson Bay's Exercise Notices under the New Series B Warrant, Hudson Bay would have received 1,356,004 Shares worth at least $11,018,393.  In addition, Defendants' failure to deliver the Shares pursuant to Hudson Bay's Exercise Notices has prevented Hudson Bay from exercising an additional 847,507 deliverable Shares due to the Blocker Provision in the New Series B Warrant.  Those shares are worth at least $6,991,933.   Thus, the total value of all the Shares due to Hudson Bay under the New Series B Warrant is at least $18,010,326.

**Defendant Mariano's Misconduct and Breaches**

64.     Upon information and belief, Defendant Mariano, the controlling shareholder, President, CEO and Chairman of the Board of Directors of Patriot National, has exerted dominion and control over Patriot National to cause Patriot National not to honor Hudson Bay's Exercise Notices under the New Series B Warrant and to cause Patriot National not to enforce the terms of the Back-to-Back Agreement against himself.

65.     As Patriot National's public filings make clear, Mariano controls Patriot National, frequently engages in related party transactions and acts in his self-interest, rather than in the interests of the Company and its shareholders.  Indeed, Patriot National's March 21, 2016 Form 10-K and other public filings disclose that Defendant Mariano has a history of self-dealing in connection with various transactions from which he has reaped substantial personal financial benefits.  For example, according to the March 21, 2016 Form 10-K, in 2015 alone, Mariano personally received $6,749,850 in proceeds in connection with Patriot National's acquisitions of businesses in which Mr. Mariano held a personal interest.

66.     Mariano's positions as the controlling shareholder, President, CEO and Chairman of the Board of Directors puts him in a position where his interests are diametrically

opposed with the Company and its shareholders.  Indeed, Patriot National's 10-K discloses the

problematic nature of his relationship to the Company:

> **Our founder, Chairman, President and Chief Executive Officer owns a significant percentage of our outstanding capital stock and will be able to influence stockholder and management decisions, which may conflict with your interests as a stockholder.**
>
> As of March 14, 2016, Mr. Mariano, our founder, Chairman, President and Chief Executive Officer beneficially owned 53.8% of the outstanding shares of our common stock. As a result of his ownership position, Mr. Mariano may have the ability to significantly influence matters requiring stockholder approval, including, without limitation, the election or removal of directors, mergers, acquisitions, changes of control of our company and sales of all or substantially all of our assets. In addition, because he is also our Chief Executive Officer, he has significant influence in our management and affairs. This control may delay, deter or prevent acts that may be favored by our other stockholders, as the interests of Mr. Mariano may not always coincide with the interests of our other stockholders.

67.     Mariano has abused that control to put his personal interests ahead of his

obligations to Patriot National and its contractual commitments by not maintaining a sufficient

number of unencumbered Shares available for delivery to Patriot National, as required by the

Back-to-Back Agreement, so it could satisfy any obligations to Hudson Bay and the other

investors.  On information and belief, not only has Mariano failed to hold a sufficient number of

unencumbered Shares, he has used his dominion and control over Patriot National to ensure that

Patriot National does not sue him or otherwise take action to enforce his obligations to deliver

Shares pursuant to the Back-to-Back Agreement he entered into with the Company.

68.     More specifically, under Section 4.1 of the Back-to-Back Agreement,

Defendant Mariano is contractually obligated to hold a sufficient number of unencumbered

Shares to deliver to Patriot National upon exercise of the New Series B Warrant and other

warrants provided to investors in the Transaction.  However, as made clear in Patriot National's

20

most recent Form 10-K and other public filings, Defendant Mariano has recklessly overextended himself resulting in a significant shortfall of unencumbered Shares that he is able to deliver to Patriot National upon exercise of the New Warrants.

69.     According to Patriot National's most recent Proxy Statement, dated April 8, 2016, Defendant Mariano has, at most, a total beneficial ownership of 14,756,122 Shares. However, on February 26, 2015, "Mr. Mariano pledged 1,330,380 shares . . . to secure obligations under a credit agreement dated as of April 11, 2013, between Mr. Mariano and UBS Bank USA."  The Proxy Statement further states that "[i]n the event of a default under the [credit agreement between Mr. Mariano and UBS], UBS Bank USA may foreclose upon any and all of the pledged shares."

70.     Likewise, on March 11, 2015, Defendant Mariano "pledged 10,525,100 shares of our common stock … to secure obligations under a credit agreement . . . between Mr. Mariano and Fifth Third Bank."  The Proxy Statement further explains that, "[i]n the event of a default [of the credit agreement between Mr. Mariano and Fifth Third Bank], Fifth Third Bank may foreclose upon any and all pledged shares."

71.     Thus, Mariano has pledged a total of 11,855,480 shares as collateral under two credit agreements that he entered into personally.  As stated above, Patriot National has calculated in its Form 10-K that "4,895,985 shares of our common stock would be issuable upon exercise of the New Series B Warrants."  However, the 11,855,480 Shares that Mariano has pledged, plus the 4,895,985 Shares that Patriot National has calculated will be due under the New Series B warrants, equals 16,751,465 total Shares, which is 1,995,343 Shares more than Mariano's total beneficial ownership.  Thus, simple arithmetic confirms that Mariano has too few unencumbered Shares (a shortfall of at least 1,995,343 Shares) to satisfy his obligations to

deliver the appropriate number of Shares to Patriot National upon exercise of the New Series B Warrants.

72.   Accordingly, on information and belief, Mariano has abused his position of control and influence over Patriot National to cause Patriot National to repudiate and breach the New Series B Warrant and the related Transaction Documents, and to further prevent Patriot National from enforcing the Back-to-Back Agreement that requires him to deliver the Shares in dispute to Patriot National for satisfaction of Hudson Bay's Exercise Notices.

<u>FIRST CLAIM FOR RELIEF</u>
**SPECIFIC PERFORMANCE**
**(As Against Defendant Patriot National)**

73.   Plaintiff repeats and re-alleges the allegations made in paragraphs 1 to 72 as if they were fully set forth herein.

74.   Pursuant to the New Series B Warrant and related agreements, Hudson Bay's Exercise Notices delivered thereunder and Hudson Bay's payment of the nominal exercise price pursuant to both Exercise Notices, Patriot National is obligated to deliver 1,356,004 Shares to Hudson Bay.

75.   Despite its clear and unambiguous contractual obligation to do so, Patriot National has repudiated its contractual obligations and failed and/or refused to deliver the Shares due and owing to Hudson Bay pursuant to the New Series B Warrant and the Exercise Notices submitted thereunder.

76.   As a result of such failure and refusal by Patriot National, Hudson Bay has suffered damages, has no adequate remedy at law, and in the absence of specific performance, will suffer irreparable harm.

77.     Under Section 14 of the New Series B Warrant, Patriot National acknowledged that remedies to Hudson Bay available under the New Series B Warrant include "a decree of specific performance and/or other injunctive relief" and that a "breach by [Patriot National] of its obligations hereunder will cause irreparable harm to [Hudson Bay] and that the remedy at law for any such breach may be inadequate."

78.     Hudson Bay requests, therefore, that the Court enter an order of specific performance directing and requiring Patriot National to immediately deliver to Hudson Bay 1,356,004 freely tradable Shares and, following delivery of the 1,356,004 Shares, to immediately honor a subsequent Exercise Notice for the remaining balance of 847,507 Shares underlying Hudson Bay's New Series B Warrant.

## SECOND CLAIM FOR RELIEF
### REPUDIATION / BREACH OF CONTRACT
### (The New Series B Warrant)
### (As Against Defendant Patriot National)

79.     Plaintiff repeats and re-alleges the allegations made in paragraphs 1 to 78 as if they were fully set forth herein.

80.     The New Series B Warrant is a valid and enforceable contract.

81.     Hudson Bay has performed all of its obligations under the New Series B Warrant and the exercise of 1,356,004 Shares.

82.     Patriot National's letters to Hudson Bay stating that Patriot National will not honor Hudson Bay's Exercise Notices submitted under the New Series B Warrant, and Patriot National's other conduct in failing and refusing to deliver to Hudson Bay the Shares due and owing to Hudson Bay pursuant to the New Series B Warrant and the Exercise Notices submitted thereunder, constitutes a repudiation and breach of the New Series B Warrant.

83.     Hudson Bay has suffered damages as a result of Patriot National's repudiation and breach of the New Series B Warrant.

84.     By reason of the foregoing, Patriot National is liable to Hudson Bay for direct and consequential damages against Patriot National, in an amount to be determined at trial, but not less than the value of 1,000,000 Shares according to the closing price of the Shares on April 5, 2016 ($8,060,000), plus the value of 356,004  Shares according to the closing price of the Shares on April 8, 2016 ($2,958,393), plus the value of the additional 847,507 Shares that Hudson Bay is unable to exercise due to Defendants' conduct according to the closing price of the Shares on April 11, 2016 ($6,991,933), totaling $18,010,326.

85.     In addition, Hudson Bay reserves the right to seek Buy-In Damages pursuant to  Section 1(c) of the New Series B Warrant.

### THIRD CLAIM FOR RELIEF
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (The Securities Purchase Agreement
### and the Rescission and Exchange Agreement)
### (As Against Both Defendants)

86.     Plaintiff repeats and re-alleges the allegations made in paragraphs 1 to 85 as if they were fully set forth herein.

87.     Defendants entered into the Securities Purchase Agreement and the Rescission and Exchange Agreement with Hudson Bay and agreed to abide by the terms of those agreements and related Transaction Documents.

88.     Implied in those contractual relationships were Defendants' covenants of good faith and fair dealing.

89.     Plaintiff has performed under those agreements.

90.     By refusing to honor the New Series B Warrant and failing to deliver the Shares pursuant to the Exercise Notices submitted thereunder, Defendants have deprived Hudson Bay of the agreed-upon consideration it bargained for pursuant to the Transaction.

91.     Defendants' actions have breached the implied covenant of good faith and fair dealing and have caused (and continue to cause) Hudson Bay harm and damages.

92.     By reason of the foregoing, Defendants are liable to Hudson Bay for direct and consequential damages in an amount to be determined at trial, but not less than the value of 1,000,000 Shares according to the closing price of the Shares on April 5, 2016 ($8,060,000), plus the value of 356,004 Shares according to the closing price of the Shares on April 8, 2016 ($2,958,393), plus the value of the additional 847,507 Shares that Hudson Bay is unable to exercise due to Defendants' conduct according to the closing price of the Shares on April 11, 2016 ($6,991,933), totaling $18,010,326.

**FOURTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(As Against Defendant Mariano)**

93.   Plaintiff repeats and re-alleges the allegations made in paragraphs 1 to 92 as if they were fully set forth herein.

94.   The New Series B Warrant constitutes a valid and enforceable contract.

95.   Mariano had knowledge of the New Series B Warrant.  Mariano entered into the Back-to-Back Agreement with Patriot National, under which Mariano is required to sell to Patriot National one hundred (100) percent of the number of Shares that are deliverable to Hudson Bay under the New Series B Warrant.

96.   Mariano intentionally and through wrongful and tortious conduct procured a breach of the New Series B Warrant by not delivering the Shares as required to Patriot National,

which had the effect of preventing Patriot National from delivering an equivalent amount of the Shares due to Hudson Bay pursuant to the New Series B Warrant.

97.   Upon information and belief, Mariano intentionally and through wrongful and tortious conduct has prevented Patriot National from enforcing the terms of the Back-to-Back Agreement.

98.   Mariano's intentional and tortious conduct was carried out for his own personal financial interest and benefit, and not in the interests of Patriot National or its shareholders.

99.   As a result of Mariano's intentional and tortious conduct, Patriot National has breached the New Series B Warrant by failing and refusing to deliver the Shares due and owing to Hudson Bay pursuant to the New Series B Warrant and Hudson Bay's Exercise Notices submitted thereunder.

100.   As a result of Mariano's intentional and tortious conduct causing and resulting in Patriot National's breach of the New Series B Warrant, Hudson Bay has suffered damages.

101.   By reason of the foregoing, Mariano is liable to Hudson Bay for direct and consequential damages in an amount to be determined at trial, but not less than the value of 1,000,000 Shares according to the closing price of the Shares on April 5, 2016 ($8,060,000), plus the value of 356,004  Shares according to the closing price of the Shares on April 8, 2016 ($2,958,393), plus the value of the additional 847,507 Shares that Hudson Bay is unable to exercise due to Defendants' conduct according to the closing price of the Shares on April 11, 2016 ($6,991,933), totaling $18,010,326.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its

favor as follows:

A.    An order of specific performance directing and requiring (1) Patriot National to immediately deliver to Hudson Bay 1,356,004 freely tradable Shares pursuant to the New Series B Warrant and the Exercise Notices submitted thereunder, and (2) the Transfer Agent to immediately issue certificates (or create a book entry on the stock register of Patriot National with the Transfer Agent, as applicable) or credit Shares to the applicable balance accounts at The Depository Trust Company, registered in the name of Hudson Bay, for the 1,356,004 Shares delivered pursuant to the Series B Warrant.

B.    An order of specific performance directing and requiring that (a) following delivery of the 1,356,004 Shares, Patriot National immediately honor a subsequent Exercise Notice for the remaining balance of 847,507 Shares underlying Hudson Bay's New Series B Warrant, and (2) the Transfer Agent immediately issue certificates (or create a book entry on the stock register of Patriot National with the Transfer Agent, as applicable) or credit Shares to the applicable balance accounts at The Depository Trust Company, registered in the name of Hudson Bay, for the balance of the 847,507 Shares deliverable pursuant to the Series B Warrant.

C.    An award of monetary damages against the Defendants, including direct and consequential damages (including, but not limited to, financing and related costs and expenses), jointly and severally, in an amount to be determined at trial, but not less than $18,010,326, plus interest.

D.    In addition to monetary, direct and consequential damages, Hudson Bay reserves the right to seek Buy-In Damages pursuant to Section 1(c) of the New Series B Warrant.

E.    An award for Hudson Bay's costs and expenses incurred in prosecuting this action and in enforcing and/or collecting upon the New Series B Warrant, including, without limitation, reasonable attorneys' fees, costs and disbursements, pursuant to Section 15 of the New Series B Warrant and Section 9(k) of the Securities Purchase Agreement.

F.    For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated:  New York, New York
      April 13, 2016

**SCHULTE ROTH & ZABEL LLP**


By: /s/ Michael E. Swartz
    Michael E. Swartz
    Mark D. Richardson

919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Plaintiff*